Filed 3/9/15  Inamori v. Kamei CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| JUDY INAMORI, as Cotrustee, etc., | H040376 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. 1-13-PR173281) |
| v. | |
| KENNETH KAMEI, as Successor Trustee, etc., | |
| Defendant and Appellant. | |

This appeal arises out of a dispute between Kenneth Kamei and Judy Inamori, two of Kenzo and Ruth Kamei's three children, regarding a trust established by their parents (the Family Trust).[1]

The Family Trust provided that upon the death of the first spouse, the Family Trust was to be divided into two subtrusts, the "Bypass Trust" and the "Survivor's Trust." The Family Trust further provided that after the death of the first spouse, the surviving spouse could amend only the Survivor's Trust; the other trusts would become irrevocable.

Ruth predeceased Kenzo.  At the time of Ruth's death in 2012, the Family Trust identified all three of Kenzo and Ruth's children--Kenneth, Judy, and Eileen Eng--as beneficiaries and successor trustees.  In November 2012, after Ruth's death, Kenzo executed an amendment providing that the children should serve as successor trustee in

---

[1] For clarity and consistency, we will use first names to refer to individual members of this family.

birth order: Kenneth first, Eileen if Kenneth could not serve, and Judy if neither Kenneth nor Eileen could serve.

After Kenzo's death in 2013, Judy filed a petition to confirm she was a cotrustee of the Family Trust and the Bypass Trust. She argued the November 2012 amendment was effective as to the Survivor's Trust only. Kenneth opposed the petition, arguing the amendment applied to all of the trusts, such that he was the sole successor trustee of the Family Trust, the Bypass Trust, and the Survivor's Trust. The trial court granted the petition. We shall affirm.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      *The Family Trust and Subtrusts*

Kenzo and Ruth executed the "Kenzo Kamei and Ruth K. Kamei Revocable Trust" (the Family Trust) on May 15, 1990. Thus, Kenzo and Ruth are the settlors of the Family Trust. The Family Trust was modified, restated, and amended numerous times between 1990 and Ruth's death. As so amended, section 5.3 of the Family Trust requires the trustee to divide the trust estate into three shares--the "Survivor's Share," the "Marital Deduction Share," and the "Nonmarital Share"--on the death of the first settlor ("the deceased settlor").

The Survivor's Share consists of the surviving settlor's separate property and quasi-community property, his or her one-half interest in the community property, and his or her one-half interest in the deceased settlor's quasi-community property. The Survivor's Share is to be held, administered, and distributed according to the terms of the Survivor's Trust "as set forth in Article Six" of the Family Trust instrument.

The Marital Deduction Share and the Nonmarital Share are to be held, administered, and distributed according to the terms of the Bypass Trust "as set forth in Article Six" of the Family Trust instrument. The Nonmarital Share is to consist of as much property as possible without a federal estate tax being imposed on the estate of the

2

deceased spouse.  The Marital Deduction Share is to consist of all of the trust assets not allocated to the Survivor's Share or the Nonmarital Share.[2]

"Article Six" of the Family Trust instrument governs the disposition of the assets of the Survivor's Trust and Bypass Trust.

Section 3.2 of the Family Trust provides that "[a]fter the death of the deceased settlor, the surviving settlor may at any time amend, revoke, or terminate, in whole or in part, the Survivor's Trust.  All other trusts shall become irrevocable and shall not be subject to amendment after the death of the deceased settlor."

Section 7.1 of the Family Trust grants the surviving settlor "full power to continue the trust administration" as "sole trustee" after the death of the deceased settlor.  Section 7.2, entitled "Successor Trustees," provided at the time of Ruth's death:  "If the office of trustee becomes vacant, . . . then settlors' children, Kenneth Y. Kamei, Eileen M. Eng, and Judy Inamori . . . shall serve as trustees."  The "general powers of trustee" are set forth in section 7.8.

---

[2] Our Supreme Court explained the rationale for the use of bypass trusts like the one here in *Donkin v. Donkin* (2013) 58 Cal.4th 412, 416-417:  "Federal law allows the property of a deceased spouse to be passed to the surviving spouse without payment of federal estate tax through the allowance of a 'marital deduction.'  [Citation.]  The value of the estate of the surviving spouse is increased by such a passage of assets and it may be enlarged to the point where it will exceed the federal unified tax credit allowable to the estate when the surviving spouse dies.  [Citations.]  A common method of addressing such a situation, having the purpose of minimizing the estate taxes owed, is to provide for the transfer to the surviving spouse of only as much of the deceased spouse's property as necessary to reduce the deceased spouse's estate tax to zero with use of the applicable federal estate tax exemption.  The property remaining in the deceased spouse's estate is placed in a bypass trust, which makes those assets available for the surviving spouse's use but does not give the surviving spouse rights to the property in the bypass trust that would cause any of the undistributed trust property to be included in the taxable estate of the surviving spouse upon his or her death.  [Citations.] . . . 'To avoid federal estate tax inclusion in the surviving spouse's estate, the bypass trust must be irrevocable and *unamendable* on and after the first spouse's death.' "

**B.   *The November 2012 Amendment***

Ruth died on June 8, 2012.  On November 2, 2012, Kenzo executed an amendment to the Family Trust instrument (the November 2012 Amendment).  The November 2012 Amendment purported to be an "exercise [of Kenzo's] right of amendment" set forth in section 3.2 of the Family Trust.  That provision permits Kenzo, as the surviving settlor, to "amend, revoke, or terminate, in whole or in part, the Survivor's Trust."

The November 2012 Amendment purports to amend section 7.2 of the Family Trust instrument, the provision governing successor trustees, to provide:  "If the office of trustee becomes vacant, . . . then settlors' children, in priority by order of birth, shall serve as trustee:  First Kenneth . . . , Second (if Kenneth is unable or unwilling or unavailable to serve) Eileen . . . , and Third (if both Kenneth and Eileen are unable or unwilling or unavailable to serve) Judy."

Kenzo died on June 1, 2013.

**C.   *Judy's Petition Under Probate Code Section 17200*[3]**

Judy filed a petition under section 17200 seeking to confirm that she was a cotrustee of the Family Trust and the Bypass Trust on September 20, 2013.  The petition alleged Kenzo lacked the authority to change the successor trustees of the Family Trust and the Bypass Trust and that the November 2012 Amendment amended the Survivor's Trust only.  In response to the petition, Kenneth took the position that the November 2012 Amendment applied to all of the trusts.

At a hearing on the petition before the probate court, Judy's counsel represented (without disagreement from Kenneth's counsel) that the trust assets remain in the Family Trust and have yet to be divided between the Bypass and Survivor's Trusts.

---

[3] All further statutory references are to the Probate Code.

4

The probate court granted Judy's petition and confirmed her, Kenneth, and Eileen as cotrustees of the Family Trust and the Bypass Trust on October 31, 2013. Kenneth timely appealed.

## II. DISCUSSION

### A. Applicable Principles of Trust Law

"[T]he primary rule in construction of trusts is that the court must, if possible, ascertain and effectuate the intention of the trustor or settlor." (*Ephraim v. Metropolitan Trust Co.* (1946) 28 Cal.2d 824, 834.) "In ascertaining the trustor's intent, we look first to the terms of the trust, though extrinsic evidence is admissible to ascertain the meaning of the trust and the intent of the trustor." (*Safai v. Safai* (2008) 164 Cal.App.4th 233, 244.) "Where . . . '[t]here is no conflict or question of credibility in the relevant extrinsic evidence[,] . . . interpretation of the trust is a question of law for our independent review.' " (*Fazzi v. Klein* (2010) 190 Cal.App.4th 1280, 1285.)

Section 17200 authorizes a trustee or beneficiary of a trust to petition the probate court "concerning the internal affairs of the trust." (§ 17200, subd. (a).) Among other things, such petitions may be brought to determine "questions of construction of a trust instrument" (*id.*, subd. (b)(1)) or "the existence or nonexistence of any immunity, power, privilege, duty, or right." (*Id.*, subd. (b)(2).) They are also properly employed to "[i]nstruct[] the trustee" (*id.*, subd. (b)(6)), "[g]rant[] powers to the trustee" (*id.*, subd. (b)(8)), or "[a]ppoint[] or remov[e] a trustee." (*Id.*, subd. (b)(10).)

### B. Kenzo Lacked the Power to Change the Successor Trustees of the Family and Bypass Trusts

On appeal, the parties dispute whether the November 2012 Amendment had the effect of making Kenneth the sole successor trustee of the Family Trust and the Bypass Trust.[4] Resolution of that dispute calls for a two-part inquiry: (1) did Kenzo have the

---

[4] The parties assume Kenzo had the power to make Kenneth the sole successor trustee of the Survivor Trust. We need not consider the validity of that assumption.

5

*power* to make Kenneth the sole successor trustee of the Family and Bypass Trusts, and, (2) if so, did he *intend* to do so. Because we conclude Kenzo lacked the authority to change the successor trustees of the Family and Bypass Trusts, we need not reach the question of his intent.

The terms of the Family Trust instrument are clear: as the surviving settlor, Kenzo lacked the authority to amend the Family Trust or the Bypass Trust after Ruth's death. Under section 3.2, those trusts were "irrevocable" and "not . . . subject to amendment."

Kenneth suggests that section 3.2 merely prevented Kenzo from amending "dispositive" provisions of the Bypass Trust (i.e., Article Six), while allowing him to alter "administrative" provisions like section 7.2 regarding successor trustees. That argument fails to account for the fact that section 3.2 rendered the Family Trust "irrevocable" and "not . . . subject to amendment" upon Ruth's death. Moreover, Kenneth offers no authority supporting such a limited reading of section 3.2. (*People v. Stanley* (1995) 10 Cal.4th 764, 793 [" '[E]very brief should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration.' "].) We conclude Kenzo had no power to change the successor trustees of the Family and Bypass Trusts by way of amendment.

Kenneth also argues that section 7.1 empowered Kenzo to change the successor trustees of all of the trusts without amending their terms. Section 7.1 grants the surviving settlor "full power to continue the trust administration" as "sole trustee" after the death of the deceased settlor. Kenneth provides no support for his position that changing the successor trustees constitutes mere "trust administration." As described below, we find no such support in either the Probate Code or the trust instrument.

Division 9, part 4, section 16000, of the Probate Code governs "Trust Administration." Chapter 2 of that part addresses the "Powers of Trustees" and provides in section 16200 that a trustee has the following "general powers": "(a) The powers

conferred by the trust instrument[;] [¶] (b) Except as limited in the trust instrument, the powers conferred by statute[;] [¶] (c) Except as limited in the trust instrument, the power to perform any act that a trustee would perform for the purposes of the trust under the standard of care provided in Section 16040 or 16047." (See *Moeller v. Superior Court* (1997) 16 Cal.4th 1124, 1129 ["A trustee's powers include those specified in the trust instrument, those conferred by statute, and those needed to satisfy the reasonable person and prudent investor standards of care in managing the trust."].) Removing and appointing successor trustees is not among the "general powers of trustee" enumerated in section 7.8 of the Family Trust instrument or the "Specific Powers of Trustees" articulated in article 2 of chapter 2 of part 4 of division 9 of the Probate Code. Nor was making Kenneth the sole successor trustee somehow essential to Kenzo's fulfillment of "the reasonable person and prudent investor standards of care in managing the trust." (*Moeller v. Superior Court*, *supra*, at p. 1129.) Accordingly, we conclude section 7.1 did not authorize Kenzo to change the successor trustees of the Family and Bypass Trusts.

The foregoing conclusion is buttressed by section 7.2 of the Family Trust, which names Kenneth, Eileen, and Judy as successor trustees. In view of that provision, it would be nonsensical to conclude that Kenzo could change the successor trustees pursuant to his section 7.1 trust administration powers without amending the Family Trust. Indeed, Kenzo acted by amendment, not merely by invoking section 7.1.

Kenneth maintains Kenzo and Ruth intended for one universal trustee (or one set of cotrustees) to be trustee of all three trusts. For that argument he relies on various provisions of the Family Trust instrument that refer to "the trustee" and his or her powers and duties with respect to "any" or "all" of the trusts created by "this trust instrument." Assuming Kenneth's reading of the instrument has merit, it does not assist him. If anything, his construction would suggest that, given Kenzo's inability to make Kenneth the sole successor trustee of the Family and Bypass Trusts, Kenzo also lacked the power to make Kenneth the sole successor trustee of the Survivor Trust. Of course, Judy's

7

petition did not address the identity of the Survivor's Trust's successor trustee and that issue is not before us.

## III.   DISPOSITION

The October 31, 2013 order is affirmed.  Judy Inamori shall recover her costs on appeal.

_____

Premo, J.

WE CONCUR:

_____

Rushing, P.J.

_____

Elia, J.